VICTOR SAFE & LOCK COMPANY v. TEXAS STATE TRUST COMPANY ET AL.

No. 1725.     Decided November 6, 1907.

**Sale—Payment—Title—Waiver.**

When the article sold is shipped to the purchaser under contract for payment of the purchase price on delivery, the seller may treat the sale as conditional and reclaim the property on failure to so pay; but he must act promptly in making his election, and his insistence on the sale and continued demand for the purchase price will be a waiver of his right to reclaim. See evidence held to support a finding that such right was waived. (Pp. 98, 99.)

Error to the Court of Civil Appeals for the Second District, in an appeal from Tarrant County.

The Safe Company sued to recover property sold and delivered to the Trust Company and not paid for. Defendants had judgment, which was affirmed on appeal by plaintiff, who thereupon obtained writ of error.

*N. J. Wade,* for plaintiff in error.—Appellant had no knowledge that the Trust Company had sold the safe to the Bank or that the latter was using it; but if such was true, no title could pass as the Trust Company had none, and the Bank had full knowledge of the facts. Lang v. Rickmers, 70 Texas, 110, and authorities there cited; Dunn v. Elser, 2 Texas App. Civ., 632; Hall v. Brown, 17 S. W. Rep., 715; Griffith v. Morrison, 58 Texas, 46; Farmers National Bank v. Henderson, 29 S. W. Rep., 562.

One party to a contract can not claim that time is of the essence and that he is no longer bound, when he alone has caused such delay; and the appellees in this case will be regarded as bailors of this safe which they have converted. McLane v. Elder, 23 S. W. Rep., 758; Farmers National Bank v. Henderson, 29 S. W. Rep., 562; Lang v. Rickmers, 70 Texas, 110, and authorities there cited.

When the contract of sale is that the goods sold shall be paid for with cash, the sale is on condition that the payment be made and until this is done, the title to the goods remains in the vendor, notwithstanding they may have come into the possession of vendee; the appellees must be held to have taken the safe upon the terms offered and it was their duty to have made cash payment, and by their failure to do so, and by their conduct in reference to the safe, they made a conversion of same, but did not vest title out of appellant; where sale is for cash both delivery and payment of the consideration must concur to pass title. Austin v. Welch, 72 S. W. Rep., 881; Lang v. Rickmers, 70 Texas, 110, and authorities there cited; Joseph v. Cannon, 11 Texas Civ. App., 295; Hall v. Brown, 17 S. W. Rep., 715; Moss v. Katz, 69 Texas, 411; Farmers Nat. Bk. v. Henderson, 29 S. W. Rep., 562; Waples v. Overaker, 77 Texas, 11; Dunn v. Elser, 2 Texas App. Civ., 632; Griffith v. Morrison, 58 Texas, 46; Ulman v. Babcock, 63 Texas, 71.

*John W. Wray,* for defendants in error.—Though defendants in error regard the finding of waiver as conclusive of the question in this court, yet nevertheless they propound that the finding is amply sustained by the testimony, and neither the trial court nor the Court of Civil Appeals could have come to any other conclusion than that plaintiff in error had waived and abandoned whatever right it may have originally had to retake the safe for its nonpayment. Leatherbury v. Conner, 23 Atl. Rep., 684; In re Froehlich, 139 Fed. Rep., 206; Austin v. Welch, 72 S. W. Rep., 881; 6 Am. & Eng. Enc., 474-5; 24 Am. & Eng. Enc., 1052-3; Farlow v. Ellis, 15 Gray, 231; Upton v. Sturbridge Cotton Mills, 111 Mass., 447; Haskins v. Warren, 115 Mass., 533; Neal v. Boggan, 11 So. Rep., 809; Wheeler v. Irish-American Bank, 31 S. E. Rep., 48; Sharff v. Meyer, 133 Mo., 428; Orthwein v. Wichita Elevator Co., 75 S. W. Rep., 364; Summers v. Mills, 21 Texas, 86; Paulson v. Lyon, 73 Pac. Rep., 511;

Freeport v. Carey, 26 S. E. Rep., 183; Bowen v. Burk, 13 Pa. St., 146; Chapman v. Lathrop, 16 Am. Dec., 433 and note; Fishback v. Van Dusen, 22 N. W. Rep., 244 (Minn.); Albert v. Lewis, 86 N. Y. Sup., 162; Martin v. Wirts, 11 Ill. App., 567; Summers v. Mills, 21 Texas, 89; Scarborough v. Alcorn, 74 Texas, 363; Rail v. Little Falls Lumber Co., 50 N. W. Rep., 471; Hayden v. Demets, 53 N. Y., 426; Mitchell v. Le Clair, 43 N. E. Rep., 117; Com. v. Hess, 23 Atl. Rep., 977; Clark v. Greeley, 62 N. H., 394; Newmark on Sales, sec. 159; 2 Schouler's Personal Prop., sec. 243; Mechem on Sales, sec. 483; Baker v. McDonald, 1 L. R. A. (N. S.), 475; Hatch v. Standard Oil Co., 100 U. S., 124; Cleveland v. Williams, 29 Texas, 209; England v. Forbes, 31 Atl. Rep., 895; Davis v. Giddings, 46 N. W. Rep., 425; Leonard v. Davis, 1 Black. (U. S.), 476; Marvin v. Norton, 7 Atl. Rep., 420; Mee v. McNider, 17 N. E. Rep., 424; Lord v. Edwards, 20 N. E. Rep., 161.

MR. JUSTICE WILLIAMS delivered the opinion of the court.

This suit was brought by plaintiffs in error against the defendants to recover a safe which the Trust Company had bought from plaintiffs and afterwards sold to its codefendant, the Bank of Commerce. The plaintiff claimed that its title had never passed for the reason, chiefly, that the sale was a conditional one for cash to be paid on delivery of the safe, which condition had never been performed. The facts, omitting unimportant details, are that the safe was ordered of plaintiff, whose place of business was Cincinnati, for the Trust Company at Fort Worth, in October, 1903, the order stipulating that the price would be paid upon delivery. This order was accepted, but shipment was delayed in accordance with instructions until June 23, 1904, when it was shipped under bill of lading in which the Trust Company was named as consignee. It was received by the Trust Company in July, 1904, and was taken into its possession and used by it until July, 1905, when it was sold by that defendant to its co-defendant, the Bank, and was thereafter used by them jointly until November 10, 1905, when the Bank became insolvent and went into liquidation.

The price was not paid on delivery and on September 8, 1904, plaintiff drew a draft on the defendant Trust Company, for the price, which it forwarded through its Bank with instructions that "if it is requested that the draft be held until the arrival of the safe, kindly do so. Do not protest draft if it is not paid, but return with reason for refusal endorsed." The draft was returned, and on September 17, 1904, plaintiff wrote the defendant Trust Company noting the return of the draft and requesting remittance at the earliest possible date. This letter was answered by the defendant Trust Company on September 23, by letter stating that it was trying to place the safe at another point "where it will be of service, and then have you ship us the one we want. We now have two chances and will know in a few days as the matter will be settled at either of two places we are figuring with, where we shall be interested, and then we will send you a check for $1,500 as requested." To this plaintiff,

on September 27, 1904, replied that it would be satisfactory "if settlement is sent in in the next few days. We are always glad to have your business and when you are ready will be glad to take up with you the matter of a large safe."

Nothing further appears until November 3, 1904, when the plaintiff again drew for the price of the safe, forwarding the draft through their bankers with the same instructions as before. This also was returned unpaid, and on December 9, 1904, the plaintiff again wrote the defendant Trust Company, "we are anxious to get this old account settled before January 1, and will thank you for remittance. We are somewhat surprised that we have not heard from you about this account." On December 17, the defendant Trust Company replied saying that the safe was entirely too small for its business and that it had been trying to place it with other parties, "which would enable us to get a large one of the same make," and promising to settle by the 1st of the year. Plaintiff replied, objecting to the proposal to postpone payment until the safe should be disposed of and asking for draft in settlement without further delay. On January 20, 1905, plaintiff again wrote defendant Trust Company, expressing surprise at noncompliance with request for remittance and demanding payment without further delay. On April 5, 1905, plaintiff drew another draft for the price. About this time the claim went into the hands of attorneys for the plaintiff for collection, and correspondence ensued between them and defendant Trust Company lasting until July 31, 1905, in which there were repeated efforts on the part of the attorneys to induce the defendant to pay, but never a demand for the surrender of the safe or the assertion of any title to it on the part of plaintiff. In the correspondence between plaintiff and the attorneys for the Trust Company the latter, while saying that the safe was not such as it wanted, at no time declined to accept it, or denied its liability for the price, and at no time prior to April 24, 1904, claimed that it was not such as was called for by the written order. In a letter to plaintiff's attorneys of the last named date there is a statement that the Trust Company claimed that the safe was not the one wanted, and that the order given to plaintiff's agent was for one of a different size, but in this same letter promises are expressed to place the safe elsewhere, and that it would be paid for. The substance of this is repeated in several of the subsequent letters, but never with a refusal to pay or a distinct denial of liability. The safe delivered, as is admitted in the record, complied with the original written order in every respect. The first demand made by plaintiff for the surrender of the safe was after the failure of the bank. The district judge found that the sale was conditioned upon the payment of the price immediately upon delivery of the safe at Fort Worth. This finding is questioned by the defendants in error in this court, but it does not appear that any objection was made to it in the trial court. We shall therefore assume for the purposes of our decision that the fact was as thus found. The trial court also found that plaintiff by its acts and conduct "waived and abandoned whatever right it had to a recovery of the safe for nonpayment," and gave

judgment for the defendant, which was affirmed by the Court of Civil Appeals for the same reason.

. We are of the opinion that the evidence amply warranted, if it did not require the finding stated. There are some differences among the decisions in other States in their statements of the law governing the subject. In a recent case, Frech v. Lewis, 67 Atl. Rep., 45, the following statement of the state of the decisions is found:

· "The settled doctrine of our cases is to the effect that where the contract of sale provides for payment of the purchase price on delivery · of the articles sold, and the seller delivers the goods, but the buyer fails to pay, the right of property does not pass to the buyer with the possession, but remains with the seller, who may at his option reclaim the goods. In some jurisdictions the right of property is held to pass with the delivery, unless at the time the right to retake is expressly declared by the seller. We have not gone so far. Our cases proceed on the theory that until payment has been made, or waived, the contract remains executory, and that delivery in such case is not a completion of the contract, except as an intention to so regard it is expressly declared or can fairly be inferred from the circumstances attending. Possession, however, having passed, and the buyer by the act of the seller having been invested with the indicia of ownership, the policy of our law requires that this situation— the possession in one and the right of property in another—shall continue no longer than is necessary to enable the seller to recover the goods with which he has parted. The law gives the seller the right in such case to reclaim his goods, but he must do so promptly. Otherwise he will be held to have waived his right, and can only thereafter look to the buyer for the price. The question the present case suggests is: When does this inference of waiver arise? Our authorities admit of but one answer: Except when delayed by trick or artifice, the assertion of the right to reclaim the property must follow immediately upon the buyer's default. This does not mean that the seller must *eo instanti* begin legal proceedings to recover the goods; but it does mean that the seller, when he discovers that his delivery is not followed by payment, as he had the right to expect, is at once put to his election whether he will waive the condition as to payment and allow the delivery to become absolute, or retake the property, and that he is to allow no unnecessary delay in making his choice. The object of the law is not to multiply his remedies because of his disappointment. He may not continue to hold his right to the goods, and at the same time hold the buyer as his creditor. One or the other he must relinquish, and do it promptly, or the law will forfeit his right to elect."

In Lang v. Rickmers, 70 Texas, 110, the rule is thus stated by Judge Stayton:

"When the contract of sale is that the goods sold shall be paid for with cash, or notes executed by the vendee or a third person, the sale is on condition that the payment be made, and until this is done the title to the goods remains in the vendor, notwithstanding they may have come into the possession of the vendee, unless it appears that they were delivered to the purchaser with intent to waive

the condition of payment. (Whitney v. Eaton, 15 Gray, 225; Farlow v. Ellis, 15 Gray, 231; Hirschorn v. Canney, 98 Mass., 150; Adams v. O'Connor, 100 Mass., 518; Armour v. Packer, 123 Mass., 143; Salomon v. Hathaway, 126 Mass., 484; Russell v. Minor, 22 Wend., 659; Osborn v. Gantz, 60 N. Y., 541; Stone v. Perry, 60 Maine, 49; Seed v. Lord, 66 Maine, 580; Paul v. Reed, 52 N. H., 138; Michigan Cent. Railroad v. Phillips, 60 Ill., 193; Van Duzor v. Allen, 90 Ill., 499; Summers v. Mills, 21 Texas, 86.)

"Whether a delivery is made with intent to waive the condition of payment is a question of fact, and that having been submitted to the jury and found in favor of Mrs. Rickmers, upon evidence that justified the finding, this is conclusive of the question."

Whatever may be the true rule as to the effect of a delivery unaccompanied by any circumstances showing an intention to make it a conditional delivery, the evidence sustains the finding that the condition in this case was waived, and this court can not interfere with it. It may be true that conduct of the seller, such as would ordinarily amount to a waiver, will not have that effect when it has been induced by artifice or trick, but, if there was evidence in this case to raise that question, no finding of the trial court was invoked upon it, and this court can not find the necessary facts as conclusively established.

The same answer is conclusive of a further contention which seems to be, in substance, that the purchaser never accepted the safe, but held it as bailee of the seller under promise to sell and account for the price.

*Affirmed.*