SEYMOUR et al. v. AUSTIN et al. (ALBRIGHT et al., third-party defendants).

Civ. A. No. 5869.

United States District Court
D. Oregon.

Dec. 29, 1951.

Thomas H. Tongue, III, Hicks, Davis & Tongue, of Portland, Or., and Nordquist & Schnatterly, of Centralia, Wash., for plaintiffs.

Floyd D. Hamilton, Kell & Hamilton, of Portland, Or., for defendant and third-party plaintiff Belshee.

Lofton L. Tatum and Malcolm H. Clark, both of Portland, Or., for third-party defendants.

McCOLLOCH, District Judge.

Action by Twin City Sales to recover purchase price of cattle sold to one Austin. I have already held that Austin had ap-parent authority to act for Belshee and that Belshee is liable to Twin City Sales.

The Third Party Controversy

Austin purchased the cattle at auction at Centralia, Washington. On the way home to The Dalles, Oregon, where Austin and Belshee lived, Austin decided to sell the cattle as his own at the Portland, Oregon Union Stockyards. This he did through the medium of third party defendants, commission men, authorized to do business under the "Packers and Stockyards Act, 1921", Chapter 9, Title 7, U.S.C.A. § 181 et seq.

Third party defendants did not know that the cattle did not belong to Austin, nor were they negligent in any respect.

On these facts, third party defendants claim immunity from liability to Belshee, the real owner, on the authority of Sullivan Co. v. Wells, D.C., 89 F.Supp. 317, opinion by Judge Donohoe of Omaha.

Since the argument, Judge Bell in the District Court of Minnesota, has come to the opposite conclusion from Judge Donohoe. DeVries v. Sig Ellingson & Co., D. C., 100 F.Supp. 781. I am constrained to follow Judge Bell's opinion.

State cases considering the effect of the Packers and Stockyards Act follow: Cresswell v. Leftridge, Mo.App., 194 S.W.2d 48; Birmingham v. Rice Bros., 238 Iowa 410, 26 N.W.2d 39, 2 A.L.R.2d 1108, certiorari denied 332 U.S. 768, 68 S.Ct. 79, 92 L.Ed. 353, rehearing denied 332 U.S. 820, 68 S.Ct. 151, 92 L.Ed. 397; Citizens State Bank of Dalhart v. Farmers Union Livestock Coop. Co., 165 Kan. 96, 193 P.2d 636; Mason City Production Credit Ass'n v. Sig Ellingson & Co., 205 Minn. 537, 286 N.W. 713, certiorari denied 308 U.S. 599, 60 S.Ct. 130, 84 L.Ed. 501, rehearing denied 308 U.S. 637, 60 S.Ct. 178, 84 L.Ed. 529; Moderie v. Schmidt, 6 Wash.2d 592, 108 P.2d 331; First Nat. Bank v. Siman, 67 S.D. 118, 289 N.W. 416.[1]

The first named State case holds with the Nebraska District Court that the Act gives

---

1. Compare Montana Meat Co. v. Missoula Livestock Auction Co., Mont., 230 P.2d 955. And see 9 Code of Federal Regulations, Sec. 201.39.

916

immunity of the sort here claimed to commission men licensed under it, while the remaining five State cases hold contra, and in accord with Judge Bell's recent decision. As indicated above I am holding in accord with the majority.

It is of interest that there was testimony that sale of mortgaged or stolen cattle at the Portland yards was rare. The usual machinery for checking ownership seems in this case to have broken down. The only title papers Austin presented were in Belshee's name; both of the state brand inspectors who saw the papers have since died. Austin was not offered as a witness. Immediately after the larceny he was arrested on a Washington state warrant, but discharged without prosecution, after his deposition, presumably favorable to plaintiffs herein, was taken. His present whereabouts are now said to be unknown.

Judgment will be for plaintiffs, and for defendant Belshee as third party plaintiff over against third party defendants.