Jack FREEMAN, Appellant,

v.

Roger C. HILL, d/b/a Commercial Equipment Leasing Company, Appellee.

No. 15113.

Court of Civil Appeals of Texas.

Houston (1st Dist.).

Oct. 12, 1967.

Rehearing Denied Nov. 2, 1967.

Schlanger, Cook & Cohn, Joel W. Cook, Houston, for appellant.

Hutcheson, Taliaferro & Hutcheson, Greg N. Martin, Houston, for appellee.

COLEMAN, Justice.

This is an appeal from the judgment entered in a suit for conversion of two Mark V Raytheon Radarange Ovens. After a trial to the court without a jury, a judgment was entered for the plaintiff in the sum of $2,069.18.

Appellant contends that no conversion was shown by the evidence; that title passed to appellant, with appellee's consent, subject to an undisclosed outstanding lien exceeding the purchase price, so that appellee suffered no actual pecuniary loss in the transaction, and that the trial court's finding as to the value of the ovens is contrary to the great weight of the evidence.

The ovens in question were purchased by Roger Hill in April or May, 1964, for a total consideration of $4,990.00. He borrowed $4,300.00 of this money from the Frost National Bank of San Antonio, securing the loan with a chattel mortgage which was duly recorded in Harris County, Texas. The ovens were leased to Attif's, Inc. and Attif Hallaway of Houston, Texas, and the lease agreement was assigned to the bank as collateral security. The purchase and lease were arranged by Jack Dillin, and as an inducement to Hill to enter the transaction, Dillin entered into a written agreement to repurchase the ovens from Hill in the event of a default by the lessees. This agreement provided that Dillin would repurchase the ovens on default within thirty days after demand by the payment of the agreed price in cash to appellee, Hill, at his office in San Antonio, Texas.

After the lessees defaulted under the terms of the lease agreement in October, 1964, Hill called on Dillin to repurchase in accordance with his agreement. When it appeared that Dillin would not be able to make the cash payment, Hill instructed Dillin to pick up the ovens from the lessee and to find a purchaser for them. Dillin then sold the ovens to Jack Freeman, appellant, for $1,000.00 to be paid by a credit on an indebtedness owed to Freeman by Dillin. Hill knew nothing about this sale until after Dillin had executed a bill of sale and had delivered possession to Freeman. When Hill learned of the sale to Freeman, he denied that Dillin was authorized to sell the ovens and demanded possession from Freeman in March, 1965. Freeman

refused to deliver the ovens to Hill. Hill continued to make the stipulated payments on his note to Frost National Bank until November, 1965. Subsequently Riverview Company, assignee of Frost National Bank, foreclosed on the ovens by virtue of the chattel mortgage, after one of the ovens had been sold by Freeman. They were repossessed in August, 1966.

The trial court filed findings of fact and conclusions of law. Appellant attacks certain of the findings of fact as having no support in the evidence. He contends that certain conclusions of law are erroneous and that the finding of fact with reference to the value of the ovens is contrary to the great weight and preponderance of the evidence. None of these assignments can be sustained.

■ The evidence supports the conclusion that at the time Dillin executed the bill of sale to Freeman, he was neither the owner of the ovens nor authorized to execute a bill of sale to a purchaser on behalf of appellee. By a letter dated February 9, 1965, appellee demanded that Dillin repurchase the ovens in accordance with the terms of the repurchase agreement. In the letter he told Dillin that he would send him a bill of sale when he received $4,040.99 cash in his office in San Antonio. Dillin testified that he did not have the money and did not pay appellee. There is no evidence that would require a finding that the offer to sell to Dillin contemplated terms other than cash. There was no sale by Hill to Dillin. Lang v. Rickmers, 70 Tex. 108, 7 S.W. 527 (1888); Valley Stockyards Company v. Kinsel, 369 S.W.2d 19 (Tex. Sup.1963).

The evidence clearly supports a finding that Hill only authorized Dillin to find a purchaser for him. Hill so testified, and a letter from Hill to Dillin's attorney supports this testimony, as does a letter from Hill to Dillin, a portion of which was quoted in the record. Dillin had no actual authority to sell the ovens and execute the bill of

sale. Freeman did not acquire title since Dillin had no title. Haynes v. Howe, 230 S.W. 248 (Tex.Civ.App., El Paso 1921, no writ hist.); 50 Tex.Jur.2d, Sales, § 274, pp. 651–652.

■ Since Freeman merely gave Dillin credit on a debt as consideration for his purchase, he was not a bona fide purchaser for value. He had notice of Hill's ownership by reason of the letter to Wunderlich, if he saw it prior to purchasing the ovens, a fact not clearly established by the evidence, and made no inquiry as to title. 50 Tex.Jur.2d, Sales, §§ 255–257. In any event, the evidence does not require a finding that Hill so vested the possession and apparent right to the ovens in Dillin as to estop him from claiming the property. He neither did anything with the intention of misleading Freeman nor was he guilty of negligence calculated to produce a deception. The only evidence of such negligent conduct is the letter to Wunderlich, which, viewed most favorably to appellant, might have been held as authorizing Dillin to sell the property as agent for Hill. This could not be construed as authorizing the agent to sell for his own benefit. This letter authorized Dillin to arrange a cash sale from Hill to a buyer. It will not support, much less require, a finding of apparent authority to sell. Hill had title to the property, and was entitled to the possession thereof, when he demanded it of Freeman. Seigal v. Warrick, 214 S.W.2d 883 (Tex. Civ.App., Amarillo 1948, writ ref., n.r.e.).

We have carefully reviewed the testimony concerning the market price of the ovens. The testimony of Hill was admissible and supports the finding of the trial court. Other testimony in the record does not so preponderate as to make the finding of the trial court clearly wrong. Lewis v. Miller, 336 S.W.2d 240 (Tex.Civ.App., San Antonio 1960, no writ hist.); McCormick and Ray, Texas Law of Evidence, Vol. 2, § 1422, p. 259.

There is no evidence requiring a conclusion that appellee violated, or contemplated

violating, any provision of his mortgage with Frost National Bank. The measure of damages applied by the trial court was correct. 14 Tex.Jur.2d, Conversion, § 26, pages 30–32.

The judgment of the Trial Court is affirmed.